904 F.2d 640
 31 ERC 1946, 20 Envtl. L. Rep. 20,999
 LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, INC., Plaintiff-Appellant,
v.
Leigh PEGUES, in his official capacity as Director of the
Alabama Department of Environmental Management, et
al., Defendant-Appellee.
 No. 89-7640.
 United States Court of Appeals, Eleventh Circuit.
 June 28, 1990.
 
 Debra A. Swim, Tallahassee, Fla., for plaintiff-appellant.
 Pegues & Warr, Olivia H. Jenkins, Ala. Dept. of Environmental Management, Montgomery, Ala., Fournier J. Gale, III, Jarred O. Taylor, II, Alfred F. Smith, Jr., Maynard, Cooper, Frierson & Gale, P.C., Birmingham, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before CLARK and EDMONDSON, Circuit Judges, and RUBIN*, Senior Circuit Judge.
 ALVIN B. RUBIN, Senior Circuit Judge:
 
 
 1
 Contending that the director of a state environmental agency was not properly interpreting the Federal Water Pollution Control Act,[1] an environmental-protection group brought suit for declaratory and injunctive relief against the director, invoking the Supremacy Clause of the federal Constitution as the sole basis for jurisdiction. We affirm the district court's dismissal of the case, holding that, while the district court had jurisdiction, the Supremacy Clause does not grant an implied cause of action for the relief sought, and therefore, the complaint failed to state a claim upon which relief could be granted.
 
 
 2
 * The Federal Water Pollution Control Act (FWPCA), as amended, creates a comprehensive program for the restoration and maintenance of the nation's water resources.[2] The Act seeks to achieve this goal by establishing a national pollution discharge elimination system (NPDES), which regulates the quantity and type of pollutants that a discharger, referred to as a point source, may emit into the nation's waterways, and by providing a schedule for compliance with the Act. Before discharging any pollutants into a waterway, a point source must obtain a discharge permit. The Act places primary responsibility for its enforcement, including the issuance of point source discharge permits, on the Administrator of the Environmental Protection Agency, but it also permits individual states to create their own NPDES permit systems.[3] Upon certification by the Administrator that a state's NPDES is in accord with the Act, authority to issue permits and to enforce the terms of the Act shifts to the relevant state agency.[4]
 
 
 3
 Alabama has adopted an NPDES system, administered by the Alabama Department of Environmental Management (ADEM),[5] which has been duly approved by the EPA Administrator. ADEM proposed to issue two discharge permits to the River Gas Corporation for its coal bed methane production operations. The Legal Environmental Assistance Foundation (LEAF) sought to bar the Director of ADEM, Leigh Pegues, from issuing the permits, on the grounds that the permits violated the FWPCA because the proposed effluent limitations exceeded the amounts permitted under the applicable federal regulations.[6] The EPA has consistently taken the position that the type of discharges at issue are not prohibited by the regulations that LEAF seeks to invoke.
 
 
 4
 In response to an order to show cause why LEAF's suit should not be dismissed for lack of subject matter jurisdiction, LEAF pleaded that it had a cause of action implied from the Supremacy Clause of the United States Constitution[7] as the sole basis for jurisdiction. The district court held that it lacked subject matter jurisdiction over LEAF's complaint,[8] and that the FWPCA did not grant LEAF a right of action against the Alabama state agency.[9]
 
 II
 
 5
 Whether a court has the power to decide a lawsuit is a question of jurisdiction. Whether the complaint states a claim for which relief may be granted is a question of the merits of the suit.[10] A federal court has jurisdiction over a suit to enforce a right assertedly granted by federal law, even though it may ultimately determine that the case lacks merit.[11]
 
 
 6
 All parties now concede, correctly, that the district court did indeed have jurisdiction of LEAF's complaint, and that the sole question for review is whether the judgment should be affirmed on the basis that the complaint failed to state a claim for which relief might be granted.[12] We therefore consider LEAF's claim that the cause of action asserted may be implied from the Supremacy Clause.
 
 
 7
 As the Supreme Court stated in Bush v. Lucas,[13] "The federal courts' power to grant relief not expressly authorized by Congress is firmly established."[14] The proper exercise of this power, however, depends on both the nature of the right to be vindicated and the existence and adequacy of alternative statutory remedies.[15] We therefore first examine the structure of the remedial provisions of the Act to determine the existence of such statutory remedies.
 
 
 8
 The FWPCA provides a variety of means for interested citizens to bring lawsuits to enforce the provisions of the statute. Section 1365(a) of the statute provides that, subject to certain conditions:
 
 
 9
 any citizen may commence a civil action on his own behalf--
 
 
 10
 (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
 
 
 11
 (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.[16]
 
 
 12
 In addition, Sec. 1369(b) provides for direct review in a circuit court of appeals of specific administrative actions under the statute.[17] Thus, a citizen may bring a suit in federal court against an alleged polluter for violation of the Act or a NPDES permit, or against the Administrator of the EPA to require him to perform any non-discretionary statutory functions, which include supervision of state NPDES programs.
 
 
 13
 In neither its original nor its amended complaint, nor in its brief to this court, however, has LEAF invoked Sec. 1365 or Sec. 1369. Nor does LEAF contend that a cause of action should be implied from the statute apart from these provisions. In Middlesex County Sewerage Authority v. National Sea Clammers Association,[18] the Supreme Court reviewed the "unusually elaborate" enforcement and review provisions of the Act,[19] and held that "both the structure of the Act[ ] and [its] legislative history lead us to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied."[20]
 
 
 14
 Seeking to sidestep the holding of Sea Clammers, LEAF claims that a constitutional cause of action should be implied directly from the Supremacy Clause, under the test for constitutional remedies adopted in Davis v. Passman[21] and Carlson v. Green,[22] because the issuance of the state permits would violate the federal statute, cause irreparable harm to LEAF, and LEAF has no adequate alternative remedy in state or federal court.
 
 
 15
 Ex Parte Young[23] established that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.[24] This principle is not restricted to constitutional rights, for which a cause of action may be implied directly from the Constitution,[25] but also includes the right to be free from enforcement of state law that is pre-empted by a federal statute.[26]
 
 
 16
 A leading treatise has concluded that "[t]he best explanation of Ex Parte Young and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officials who are threatening to violate the federal Constitution or laws."[27] In addition, LEAF cites dicta in footnotes from Shaw v. Delta Air Lines[28] and Franchise Tax Board v. Construction Laborers Vacation Trust,[29] which suggest that a federal cause of action might be implied to permit a declaratory adjudication that federal law pre-empts a contrary state law, even if the federal statute does not expressly provide a cause of action.[30]
 
 
 17
 These expressions, however, do no more than indicate that the Supremacy Clause provides federal jurisdiction[31] for a cause of action implied from the statute, a distinction noted more clearly in dicta in a more recent case, Lawrence County v. Lead-Deadwood School District.[32] This jurisdictional view of the Supremacy Clause was best stated by the Second Circuit in Andrews v. Maher:[33]
 
 
 18
 The Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism. While that clause is the reason why a state law that conflicts with a federal statute is invalid, it is the federal statute that confers whatever rights the individual is seeking to vindicate.[34]
 
 
 19
 Both LEAF and the state agree that the proposed permits comply with the federal statute and regulations as they have been interpreted by the EPA. LEAF's complaint, properly understood, is that a cause of action should be implied to review the Administrator's erroneous interpretation of federal law in a proceeding against the state agency.
 
 
 20
 LEAF's real dispute, therefore, is not with the state, but with the Administrator. To imply from the Supremacy Clause a cause of action against a state official for review of the Administrator's interpretation of the federal statute or, as here, to dispute the Administrator's interpretation of the regulations the Agency has promulgated, would be to bootstrap a statutory claim that should be asserted against the Administrator into a constitutional issue. Applying Young in these circumstances would ignore the important distinction between remedies implied to redress constitutional violations and remedies, whether implied or express, for violations of statutory rights.
 
 
 21
 When the federal right in question is derived from the Constitution, it is obviously for the courts to determine both the scope of the right and the adequacy of the remedy, whether the remedy is a matter of constitutional common law[35] or statute.[36] When, however, the right at issue is purely the creation of a federal statute, the judicial role is different. As the Supreme Court stated in Davis v. Passman:[37]
 
 
 22
 Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner. ... In each case, however, the question is the nature of the legislative intent informing a specific statute, and Cort set out the criteria through which this intent could be discerned.[38]
 
 
 23
 The FWPCA precisely defines the means of redress for its violation and for challenging the Administrator's actions. LEAF does not assert that we should imply more from the statute, and we find no basis for implying any other cause of action.[39] The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 Honorable Alvin B. Rubin, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Codified as amended at 33 U.S.C. Secs. 1251--1367 (1982 & Supp. V 1987)
 
 
 [2]
 See 33 U.S.C. Sec. 1251 (1982)
 
 
 [3]
 Id. Sec. 1342
 
 
 [4]
 See id. Sec. 1342(c)
 
 
 [5]
 See Ala.Code Sec. 22-22A-1 et seq. (1989)
 
 
 [6]
 See 33 U.S.C. Sec. 1370 (1982), 40 C.F.R. Sec. 435.32 (1988)
 7 U.S. Const., Art. VI, cl. 2.
 
 
 [8]
 LEAF v. Pegues, 717 F.Supp. 784 (M.D.Ala.1989)
 
 
 [9]
 717 F.Supp. at 788-90 (quoting Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 90092673;0017;75129812
 
 
 [10]
 See Montana-Dakota Utilities Co. v. Northwestern Public Serv., 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951)
 
 
 [11]
 See 28 U.S.C. Sec. 1331 (1988)
 
 
 [12]
 See Fed.R.Civ.P. 12(b)(6)
 
 
 [13]
 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)
 
 
 [14]
 Id. at 374, 103 S.Ct. at 2409
 
 
 [15]
 Id. at 381-90, 103 S.Ct. at 2415-17
 
 
 [16]
 33 U.S.C. Sec. 1365(a) (1982)
 
 
 [17]
 33 U.S.C. Sec. 1369(b) (1982)
 
 
 [18]
 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)
 
 
 [19]
 Id. at 13, 101 S.Ct. at 2623
 
 
 [20]
 Id. at 18, 101 S.Ct. at 2625
 
 
 [21]
 442 U.S. 228, 245-48, 99 S.Ct. 2264, 2277-79, 60 L.Ed.2d 846 (1979)
 
 
 [22]
 446 U.S. 14, 18-23, 100 S.Ct. 1468, 1471-74, 64 L.Ed.2d 15 (1980)
 
 
 [23]
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)
 
 
 [24]
 E.g., Shaw v. Delta Air Lines, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983)
 
 
 [25]
 First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 316 & n. 9, 107 S.Ct. 2378, 2386 & n. 9, 96 L.Ed.2d 250 (1987)
 
 
 [26]
 Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Cf. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (no federal cause of action for parties seeking an adjudication that state law is not pre-empted by federal law)
 
 
 [27]
 13B C. Wright, A. Miller & E. Cooper, Fed.Prac. & Proc. Sec. 3566 at 102 (2d ed. 1984)
 
 
 [28]
 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)
 
 
 [29]
 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)
 
 
 [30]
 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14; 463 U.S. at 20 n. 20, 103 S.Ct. at 2851 n. 20
 
 
 [31]
 See 28 U.S.C. Sec. 1331 (1988)
 
 
 [32]
 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985)
 
 
 [33]
 525 F.2d 113 (2d Cir.1975)
 
 
 [34]
 Id. at 119; see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 612 n. 29, 99 S.Ct. 1905, 1913 n. 29, 60 L.Ed.2d 508 (1979); Swift & Co. v. Wickham, 382 U.S. 111, 126-27, 86 S.Ct. 258, 266-67, 15 L.Ed.2d 194 (1965) (mere allegation of a conflict between state and federal statutes does not raise a substantive constitutional issue requiring a three-judge district court)
 
 
 [35]
 See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [36]
 See Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)
 
 
 [37]
 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)
 
 
 [38]
 Id. at 241, 99 S.Ct. at 2275 (citing Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)); see also Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)
 
 
 [39]
 Sea Clammers, 453 U.S. at 18, 101 S.Ct. at 2625; see Bush v. Lucas, 462 U.S. 367, 388, 103 S.Ct. 2404, 2416-17, 76 L.Ed.2d 648 (1983)