CITY OF HOUSTON, Appellant,

v.

GLENSHANNON TOWNHOUSE
COMMUNITY ASSOCIATION,
INC., Appellee.

No. 17717.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 2, 1980.

Edward A. Cazares, W. Torrance Fiddes, Jr., Houston, for appellant.

Wood, Lucksinger & Epstein, Marc A. Kasner, Houston, for appellee.

Before WALLACE, PEDEN and DOYLE, JJ.

WALLACE, Justice.

This is a suit to compel the City of Houston to permit a townhouse homeowner's association to participate in a garbage collection cost reimbursement sponsorship program (Program) whereby the homeowner's association contracts with a private contractor for trash pickup and it is reimbursed by the city on a per home basis. The association also sued for damages allegedly occurring from the date the City denied its participation in the program. Judgment was for the association for damages and a mandatory injunction ordering the City to reimburse the association in the same manner as all other participants in the program. The City brings three points of error alleging that the trial court erred in: (1) not applying the "rational basis" test to the action of the City; (2) concluding that the City acted arbitrarily and capriciously because there was not a scintilla of evidence to support the finding and; (3) finding damages in the absence of an unconstitutional "taking" of property or a civil rights injury pursuant to Title 42, § 1981 et seq., U.S.C.A. We affirm.

The City of Houston has an established policy whereby any association of homeowners of single family detached dwellings may contract for private garbage pickup and the City will reimburse the association at the rate of $3.50 per dwelling per month. This policy does not permit the participation of an association of single family townhome dwellers. The City contends that reimbursement is made because the City saves money in that it does not have to provide men and equipment to pick up the garbage, and this saving is passed on to the participating homeowners. Its contention is that most townhomes are located on private streets; that the City does not go onto private streets to pick up garbage so, they do not save money when the townhome owners associations contract for private garbage pickup. However, the Director of Solid Waste Management, Mr. McDaniel, testified that two townhome associations were participating in the program prior to appellee's application on November 30, 1978, and another was admitted to participate between the date of denial of appellee's application on January 17, 1979, and the date of trial. Also, Mr. McDaniel testified that there is no direct relationship between the $3.50 reimbursement and the actual cost the city would spend if they were to make the garbage pickup in the participating areas. The reimbursement is uniform throughout the City, irrespective of the size or location of the participating group.

The court made pertinent findings of facts, as follows:

2. The City has a Garbage Costs Reimbursement Sponsorship Program (Program) whereby it reimburses detached residential homeowners, at the rate of $3.50 per month multiplied by the number of homeowners in the association who are participating in the Program, if that association arranges for private trash pickup rather than utilizing the services Defendant normally provides for trash pickup.

3. Plaintiff is a residential homeowner's association, composed of single family townhouse residential homeowners.

6. All associations composed of single family detached residential homeowners are permitted to participate in the Program and all such associations receive the same reimbursement per home per month regardless of its size or the projected cost to Defendant to pick up the trash from the homeowners within that association.

7. Plaintiff formally applied to Defendant for participation in the Program on November 30, 1978, and Plaintiff's application was rejected by Defendant on January 17, 1979. Defendant rejected Plaintiff's application on the ground that Plaintiff is an association composed of single family townhouse residential homeowners rather than single family detached residential homeowners as required by the Program's guidelines.

8. There are at least two associations composed of single family townhouse residential homeowners that have been participating in the program continually since August, 1977, and are currently participating in the Program.

9. Single family townhouse residential homeowners and single family detached residential homeowners pay the same real property tax, based upon the same rate to Defendant, which tax is assessed based upon the valuation of their residences.

12. Had Plaintiff been approved for participation in the Program, Plaintiff would have received a total of $7,595.00 from November 1, 1978, through January 2, 1980. Plaintiff would additionally be entitled to all monies that would be receivable in the future by virtue of Plaintiff's continued participation in the Program or its successor.

The conclusions of law pertinent to the appeal are:

1. The Program and the implementation thereof are being carried on arbitrarily, capriciously, and in bad faith by Defendant and, as a result, Plaintiff is being deprived of property by Defendant without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 19 of the Constitution of the State of Texas.

2. The Program and the implementation thereof by Defendant are discriminatory in nature, there is no rational basis for the classification as they presently exist and, as a result, Defendant is denying Plaintiff equal protection of the law in violation of the Fifth and Fourteenth Amendments to the Constitution of the State of Texas.

3. Plaintiff has been damaged as a result of Defendant's actions in the amount of $7,595.00 for past damages from November 1, 1978, through January 2, 1980, with interest thereon as it has accrued, at the rate of six percent (6%) per annum from November 1, 1978 through January 2, 1980, in the amount of $284.55 for a total amount of $7,879.55, plus interest thereon at the rate of nine percent (9%) per annum, from the date of Final Judgment, which is January 21, 1980, as well as all monies that would be receivable in the future by virtue of Plaintiff's continued participation in the Program or its successor.

4. Plaintiff is entitled to full participation in the Program effective January 2, 1980, and Defendant is to make timely payments to Plaintiff thereafter at the same rate as other homeowner associations enjoying the benefits of such Program and so long as any homeowners' association is permitted to participate in the Program or its successor.

By its points of error one and two the City contends that the court erred in failing to apply the "rational basis" test to the City's actions, and in finding that the City acted arbitrarily and capriciously and in bad faith where there was not a scintilla of evidence to support such a conclusion. We will treat these as "no evidence" points.

Appellant and appellee are in agreement that the general policy of appellant City is to allow associations comprised of single family detached dwelling to participate in

its garbage reimbursement program if said association desires to contract for private garbage pick–up, and to deny such participation to townhome associations such as appellee. This policy, in practical effect, creates two classes of persons.

Appellant and appellee further agree that said classification does not involve a suspect class (townhome associations are not a suspect class) nor does it deny a fundamental right (the right to participate in a garbage reinbursement program is not a fundamental right). Both parties agree that the constitutional standard by which the City's policy should be tested for equal protection analysis is whether there is a rational basis for the different classifications created by the City's program which further a legitimate governmental purpose or interest. *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973).

 Appellant correctly asserts that the burden of establishing the unreasonableness or discriminatory character of an ordinance is upon the party attacking the validity of the ordinance. *Milliken v. City Council of Weatherford*, 54 Tex. 388 (Tex.); *Gray v. S. T. Woodring Lumber Co.*, 197 S.W. 231, 233 (Tex.Civ.App.–Ft. Worth 1917, writ ref'd). There is a presumption in favor of the validity of city ordinances and if there could exist a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. *Reed v. City of Waco*, 223 S.W.2d 247, 252 (Tex.Civ.App.–Waco 1949, writ ref'd).

 Appellant contends that the testimony of Mr. McDaniel, the director of solid waste management for the City, supports a rational basis for the classification which allows owners of single family detached dwellings to participate in the reimbursement program. McDaniel testified that the city could save money in allowing said associations to participate in the sponsorship program as garbage pickup to these homes had to be done on a house by house basis.

Mr. McDaniel further stated that townhome subdivisions were usually situated on [interior] private streets from which the City does not pickup garbage so that townhomes to be entitled to garbage pickup must place their garbage in containers in public streets usually utilizing two or three pick up points. He testified the city would not save enough equipment and manpower by allowing such townhome associations to contract for private pickup and participate in the reimbursement program.

It is appellee's position that it established by competent evidence that the classification resulting in the denial of an appellee to participate in the City's program does not bear a substantial relation to the alleged legitimate purpose of the policy–to save the city money. Alternatively, appellee asserts that a municipality cannot seek to achieve a purported legitimate purpose "of providing garbage service at the lowest price by utilizing a means by which it discriminates and denies equal protection to a particular group of citizens." The United States Supreme Court in the case of *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) stated:

> "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application *if within the sphere of its operation it affects all persons similarly situated*, is not within the amendment.

> The ordinance drawn in question in the present case is of a very different character. It does not prescribe a rule and conditions, for the regulation of the use of property for laundry purposes, to which all similarly situated may conform... [T]here is nothing in the ordinance to guide or control its actions. It lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented... Though the law itself be fair on its face, and impartial in appliance, yet it is applied and administered by public authority

with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations *between persons in similar circumstances*, material to their rights, the denial of equal justice is still within the prohibitions of the constitution... The fact of this discrimination is admitted. No reason for it is shown... The discrimination which enforces it is a denial of the equal protection of the law, and a violation of the fourteenth amendment of the constitution." (emphasis added) (6 S.Ct. at pages 1070, 1072, 1073)

The *Yick Wo* case involved a municipal ordinance giving the board of supervisors authority, at their discretion, to refuse permission to carry on launderies, except where located in buildings of brick and stone. The evidence supported the conclusion that applications were denied to those of Chinese origin and applications were granted to those of the caucasian race. The Supreme Court rejected the theory that the ordinance could be upheld on the basis it promoted a legitimate interest of guarding against the dangers of fire. The court noted that even *if an applicant complied with every reasonable condition demanded by any public interest, he could be denied permission to operate his business.*

The undisputed evidence in the instant case reveals that appellant has allowed two townhome associations to participate in its garbage reimbursement program while excluding appellee on the basis that townhome associations may not participate in the program. Mr. McDaniel testified that a list of sponsorship participants introduced into evidence was a valid and correct list. One of the townhome associations listed is comprised of thirty one units. The other is comprised of 719 units. The sponsorship list reveals that one additional townhome association with a total membership of 77 units was given permission to participate in the sponsorship program after appellee filed this suit. The City offered no explanation for its unequal practice of allowing some townhome associations to participate while denying others such as appellee. Mr. McDaniel testified that although the basis of the classification which denied [some] townhome associations participation in the reimbursement program was to save money, that all residential associations comprised of detached single family dwellings were allowed participation regardless of size, location, or projected cost of the city providing garbage service, and that all received the same amount of reimbursement per home.

■ We need not determine whether the classification created by the City's sponsorship program is supported by a rational basis in furtherance of a legitimate governmental interest. As in the *Yick Wo* case, the undisputed evidence supports the premise that the implementation of the program has resulted in discrimination between persons within the same classification. (i. e. townhome association members). This is a violation of appellee's equal protection rights. *Yick Wo, supra.* The rule of law that an ordinance may establish a classification so long as the classification is reasonable and *applies equally to all persons who fall within the class* has been stated with approval in Texas. *B&B Vending Company v. City of El Paso*, 408 S.W.2d 545, 549 (Tex.Civ.App.–San Antonio 1966, writ ref'd); *Producers Associations of San Antonio v. City of San Antonio*, 326 S.W.2d 222 (Tex.Civ.App.–San Antonio 1959, writ ref'd n. r. e.). Appellee established that the City's implementation of the garbage reimbursement program was not applied equally to persons falling within the same class. The trial court correctly concluded that said program was being implemented on an arbitrary and capricious basis and in bad faith, thereby depriving appellee of its constitutional rights. Appellant's first two points of error are overruled.

### Point of Error Three

■ Appellant asserts by its final point that the trial court erred in awarding dam-

ages to appellee representing the amount of reimbursement appellee would have received had it been allowed to participate in the program, "in the absence of pleading and proof of an unconstitutional 'taking' pursuant to article 1 § 17 of the Texas Constitution or a civil rights injury pursuant to Title 42, § 1981 et seq. U.S.C.A." It is appellee's position that it pleaded and established a cause of action based upon violations of its rights under the U.S. and Texas Constitutions and that recovery of damages is a proper remedy for such violations.

Appellants assert that appellees failed to plead a cause of action under Title 42 § 1983 U.S.C.A. and that no proof was offered of a violation of civil rights. Title 42 § 1983 reads:

*"Civil Action for Deprivation of Rights"*

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Appellee pleaded that its due process and equal protection rights under the Texas and U.S. Constitutions had been violated and prayed for damages in "the amount of reimbursement it would have been entitled to from January, 1978, [the date its application was denied] through the date of judgment." Appellant did not except to the generality of said pleadings, nor did it object to appellee's proof of damages. Accordingly, appellant has waived any objection to appellee's failure to specifically plead recovery of damages under Title 42 § 1983 U.S.C.A. Rule 90 T.R.C.P.; *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652, 653 (Tex.1967); *Lewter v. Dallas County*, 525 S.W.2d 885 (Tex.Civ.App.–Waco 1975, writ ref'd n. r. e.).

Appellant asserts that the only possible theory of recovery upon which appellee would be entitled to recover damages is that of a deprivation or a taking of property which it asserts appellee did not prove. Appellee contends that the recovery of damages is a proper remedy for a violation of constitutional rights, directing this court to the United States Supreme Court's decisions in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In both these cases, the Court suggested that a citizen who proves a violation of a constitutionally protected right may be entitled to monetary damages against the responsible official. The United States Supreme Court recently enlarged the scope of liability under Title 42 § 1983 in the case of *Monell v. New York City Department of Social Service*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978). The Court in *Monell* conducted an exhaustive analysis of the legislative and judicial history of Title 42 § 1983 and concluded that a municipality qualifies as a "person" subject to liability for deprivations of civil rights under Section 1983. The Court expressly overruled its earlier decision of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 492 (1961) "insofar as it holds that the local governments are wholly immune from suit under § 1983." (at p. 619) See also 56 L.Ed.2d 895, 911 "Supreme Court's Views as to Meaning of Term 'Person' as Used in Statutory or Constitutional Provision."

The uncontroverted evidence in the instant case supports the findings that appellant City is a municipal corporation and that it was the City's policy in regard to the garbage reimbursement program to deny participation to townhome associations. It is also undisputed that no written ordinance relating to said program "is on the books" but that said policy stems from "the legislative authority granted home rule municipalities." Additionally, in response to interrogatories appellant stated that its Depart-

ment of Solid Waste Management is managed by Mr. Jack McDaniel, who oversees the operation of the sponsorship program. The City's list of associations participating in the garbage reimbursement program includes two townhome associations. Mr. McDaniel testified that its city council had approved their inclusion in the program. Mr. McDaniel further testified that while he did not agree with the policy of excluding townhome associations, he did not set the policy, he merely carried it out and the Mayor and city council set the policy. He stated that he began working for the City in 1972 and that the "policy that had been set by the City of Houston to deny this sort of sponsorship agreement to townhouses, and I continued to carry out that policy." This evidence supports the finding that the garbage reimbursement program is a policy officially adopted and promulgated by the City's officers. Accordingly, appellant City is subject to liability under 42 U.S.C.A. § 1983.

Having found no error on the part of the trial court, we affirm the judgment.