Roxanne MORSE, Plaintiff,

v.

John O. MARSH, Jr., in his capacity as Secretary of the United States Department of the Army, Defendant.

No. 85 C 1118.

United States District Court, N.D. Illinois, E.D.

March 13, 1987.

George F. Galland, Jr., Laura E. Tilly, Davis, Barnhill & Galland, P.C., Chicago, Ill., for plaintiff.

Gail C. Ginsberg, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Roxanne Morse brought this action against the United States Department of the Army under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, after the Army rejected her application for a permanent position in its Family Advocacy Program at Fort Sheridan. The case was originally assigned to Judge Grady, who recommended to the Executive Committee that it be referred to a magistrate for trial. Plaintiff objected to the reference and the defendant also stated a preference for having the case tried by the court, although he has since changed his mind. After the Executive Committee referred the case to a magistrate, plaintiff filed this motion to vacate the reference. The motion is denied for the following reasons.

### FACTS

This action was assigned to Judge Grady when Morse filed her original complaint on February 6, 1985. A discovery conference was held on May 20, 1985. Discovery was completed on November 30, 1985 and Judge Grady directed the parties to be ready for trial on reasonable notice any time after December 15. A pretrial conference was held on April 15, 1986. On April 25 Judge Grady entered an order transferring the case to the Executive Committee. The order stated that

the above-captioned cause is currently pending on my calendar. I recommend to the Executive Committee that this case be referred to a magistrate of this court [to] serve as a Special Master subject to the provisions of 28 U.S.C. § 636(b)(2) and Rule 53, F.R.C.P.... Because we cannot schedule this case for trial within 120 days after plaintiff filed her Title VII claim (120 days have already passed and due to our congested trial calendar we do not anticipate a date to open soon), the magistrate should try

this case pursuant to 42 U.S.C. § 2000e–5(f)(5).

The Executive Committee then referred the case to Magistrate Balog.

Morse originally filed a motion to vacate the reference before the Executive Committee. The Executive Committee denied her motion, ruling that it should have been brought before the judge to whom the case was assigned. Morse then filed this motion before Judge Grady. The entire case, including this motion, was transferred here when Judge Grady became Chief Judge of the District Court for the Northern District of Illinois.

## DISCUSSION

In moving to vacate the order referring this case to a magistrate, Morse seems to assume that the magistrate will be conducting a full-fledged trial and ordering the entry of final judgment. This assumption is incorrect. Although the order does state that the magistrate is to "try" the case, it is readily apparent that the magistrate is to act as a master, not as a judge.

## I. The Appointment of Masters in Title VII Cases

Section 706(f)(5) of the Civil Rights Act of 1964 expressly authorizes the judge assigned to a Title VII case to appoint a master if the case cannot be scheduled for trial within 120 days after issue is joined:

> It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within 120 days after issue has been joined, that judge may appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure.

42 U.S.C. § 2000e–5(f)(5). The court's authority to appoint masters was much broader in the version of Title VII reported out of the House Committee on the Judiciary. *See* H.R. 7152, 88th Cong., 1st Sess., § 707(f) (1963) ("In any case in which the pleadings present issues of fact the court may appoint a master and the order of reference may require the master to submit with his report a recommended order."), *reprinted in* EEOC, *Legislative History of Titles VII and XI of the Civil Rights Act of 1964*, 2001, 2012 (1968). However, that section was deliberately omitted from the version of the bill passed by the Senate. *See* 110 Cong.Rec. 8192, 8194 (April 16, 1964) (statement of Sen. Dirksen) ("Greater confidence in the outcome of the trial and more respect for the decision of the court should reasonably be expected if masters are eliminated"), *reprinted in Legislative History* at 3265. The House approved the changes made by the Senate and Title VII became law with no special provisions for the appointment of masters, although masters could still be appointed under Fed.R.Civ.P. 53.

■ Section 706(f)(5) was added to Title VII in 1972 with little debate. The proponents of the amendment that became § 706(f)(5) explained that

> [t]he normal rule as to the ability of the court to appoint a master if it wishes under Rule 53 is quite stringent—the case must be truly exceptional to qualify. All this amendment does is relax that stringency in the area of Title VII cases where justice delayed is very often justice denied.

> \* \* \* \* \* \*

> ... [R]ather than to strike what trial judges are supposed to do, we ought to leave it discretionary with judges because of the different situations that might arise in different jurisdictions.

> ... The amendment language now is simply designed to remind the judge that Congress intends that employment discrimination cases should be expedited so if the judge thinks it wise he can turn the case over to a master. This language simply highlights congressional concern without trying to mandate what the judge does.

118 Cong.Rec. 4923, 4924 (Feb. 22, 1972) (statements of Sen Javits and Sen. Dominick), *reprinted in* Bureau of National Affairs, Inc., *The Equal Employment Opportunity Act of 1972* 346 (1973). Thus a

master may be appointed in Title VII cases without the showing of exceptional circumstances ordinarily required by Fed.R.Civ.P. 53(b). *See, e.g., White v. General Services Administration,* 652 F.2d 913, 915–16 (9th Cir.1981).[1]

■ Morse argues that § 706(f)(5) should not be construed to authorize reference to a magistrate when neither side wants the reference. The court disagrees. The statute calls for the judge "to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited." 42 U.S.C. § 2000e-5(f)(5). If the case cannot be scheduled for trial within 120 days after issue has been joined, the judge has the discretion to appoint a master. *Id.* Nothing in Title VII conditions this authority on the consent of the parties. *See, e.g., Brown v. Wesley's Quaker Maid, Inc.,* 771 F.2d 952, 954–55 (6th Cir.1985) (holding that magistrate's findings following a non-consensual reference of a Title VII case are reviewed on a clearly erroneous standard), *cert. denied,* —— U.S. ——, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986); *Spaulding v. University of Washington,* 676 F.2d 1232, 1235 (9th Cir.1982) ("Because Title VII cases ... can be referred to a magistrate without the consent of the parties ... to impose the cost of the transcript on Title VII litigants as a condition of obtaining review" would be improper).

Morse correctly states that *Brown* and *Spaulding* did not squarely address the propriety of a non-consensual reference of a Title VII case to a magistrate. However, Title VII expressly provides for a master to be appointed under Fed.R.Civ.P. 53. Rule 53 does not require the parties to consent to such an appointment and the court may act on its own motion. *See, e.g., Brown,* 771 F.2d at 954; 9 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2603, at 781 & n. 26 (1971). Rule 53(a) simply states that "[t]he court in which any action is pending may appoint a special master therein." Moreover, Rule 53(b) was amended in 1983 to relax the standard for appointing a master when both parties consent to the appointment. If the consent of both parties was always required before a master could be appointed, the amendment would have rendered the rest of Rule 53(b) meaningless. Nothing in the language, legislative history or policy of Title VII indicates that Congress intended a special consent requirement to be read into Rule 53 for Title VII cases. That a United States magistrate is to act as the master does not affect this analysis.

## II. The Designation of Magistrates as Masters

Morse next argues that even if § 706(f)(5) of Title VII allows this case to be referred to a magistrate without the parties' consent, that provision has been modified by the Federal Magistrate Act. 28 U.S.C. § 631 *et seq.* Under § 636(c)(1) the parties may consent to trial by a magistrate who essentially assumes the role of the district judge up to and including the entry of final judgment in the case. The judgment is reviewable by the United States Court of Appeals as if it were a judgment of a district court, 28 U.S.C. § 636(c)(3), although the parties may agree to an appeal to a district court, 28 U.S.C. § 636(c)(4). *See Geras v. Lafayette Display Fixtures,* 742 F.2d 1037 (7th Cir.1984).

---

1. As originally reported out of the Senate Labor Committee, the Senate bill contained a cease-and-desist procedure similar to that of the National Labor Relations Act. The concern was that relying on court enforcement in the first instance resulted in unacceptable delays because of crowded dockets. *See* S.Rep. No. 415, 92d Cong., 1st Sess. 17–20 (1971), *reprinted in* The Equal Opportunity Act of 1972 at 225, 241–44. When the cease-and-desist alternative was rejected, wider use of masters in the federal courts was viewed as an alternative solution to the delays frequently experienced by Title VII litigants in federal courts. *See* 118 Cong.Rec. 3808–12 (Feb. 14, 1972) (remarks of Sen. Dominick and Sen. Javits) (debating the cease-and-desist procedure), *reprinted in* The Equal Opportunity Act of 1972 at 341–45; 118 Cong.Rec. 4816–17 (Feb. 21, 1972) (remarks of Sen. Javits) (announcing a compromise under which courts would appoint special masters to expedite Title VII cases). The compromise amendment at first provided for mandatory reference to a master. *See White v. General Services Administration,* 652 F.2d at 915 & n. 2. The language was modified to make the appointment of a master discretionary before any vote was taken.

In the Northern District of Illinois this type of reference is implemented by N.D.Ill. General Rule 1.72.

█ Morse correctly states that both parties must consent before a magistrate can try a civil case under 28 U.S.C. § 636(c). The consent requirement would apply with equal force to Title VII cases referred to a magistrate for trial under § 636(c), but as the Army points out, § 636(c) is not the only provision governing references to magistrates. *See generally Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir.1985). In particular, § 636(b)(2) provides that a magistrate may serve as a special master under Fed.R. Civ.P. 53. In this district the authority to appoint magistrates as masters in Title VII cases is implemented by N.D.Ill. General Rule 1.70(D)(1)(b). Under the rule the judge to whom a Title VII case is assigned may refer the case to a magistrate to "conduct evidentiary hearings and prepare findings ... as a Master" if it cannot be set for trial within 120 days after issue is joined.

Rule 53 defines the magistrate's duties as a master.[2] Those duties are limited to "prepar[ing] of a report upon the matters committed to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report." Fed.R.Civ.P. 53(e)(1). In non-jury actions the parties may object to the magistrate's report after it is filed, but the court "shall accept the master's findings of fact unless clearly erroneous." Rule 53(e)(2) . "The court after hearing may adopt the report or may modify it or may reject it in whole or in part, or may receive further evidence or may recommit it with instructions." *Id.* Further, the magistrate does not enter final judgment, *see, e.g., Taylor v. Oxford*, 575 F.2d 152 (7th Cir.1978), and his conclusions of law are reviewed *de novo* by the district court. *See* 5A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 53.12[5] (2d ed. 1986).

Thus Morris' argument that § 636(c) modifies § 706(f)(5) of Title VII is untenable. The latter provision allows a judge to appoint a master pursuant to Rule 53 under certain circumstances. Such an appointment is under § 636(b)(2), which allows a magistrate to be designated as a master "pursuant to ... the Federal Rules of Civil Procedure for the United States District Courts." This type of reference is more limited than a reference under § 636(c) and the consent requirements of that section are not implicated.[3]

Morse also argues that this case cannot be referred to a magistrate because the steps for assigning it to a judge prescribed by § 706(f)(4) of the Civil Rights Act of 1964 have not been taken. That section provides:

> It shall be the duty of the chief judge of the district ... in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district ... shall certify this fact to the chief judge of the circuit ... who shall then designate a district or circuit judge of the circuit to hear and determine the case.

42 U.S.C. § 2000e–5(f)(4). It is true that these steps were not taken. In this district the assignment of cases to judges largely has been designated to the court clerk. Formerly the clerk assigned newly filed Title VII cases directly to a magistrate. In *Flowers v. Crouch-Walker Corp.*, 507 F.2d 1378 (7th Cir.1974), the Seventh Circuit invalidated this practice, stating that by enacting §§ 706(f)(4) and (5)

> Congress imposed upon the judges of the court themselves the duty to assign cases under the Civil Rights Act of 1964. It has indicated a preference to have the case heard by a judge and has authorized the appointment of a master to hear such

---

2. "A magistrate is subject to this rule only when the order referring a matter to the magistrate expressly provides that the reference is made under this Rule." Fed.R.Civ.P. 53(f). The order in this case does so provide.

3. In *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d at 954 n. 1, the court commented that the § 636(c) procedure was so different that it was not really a reference at all, but was included in its discussion for the sake of clarity.

a case only when a particular judge has determined that that specific case cannot be heard within 120 days after issue has been joined.

507 F.2d at 1380. Now Title VII cases filed in this district are immediately assigned to judges, just like other civil cases. *See* N.D.Ill. General Rules 2.00–2.23. Ordinarily the assigned judge is responsible for the case until it is resolved by trial or otherwise.

Not all districts follow this practice and Title VII cases may need special handling in such districts. However § 706(f)(4) only demands that a judge be designated immediately; it does not require that the judge so designated hear and determine the case immediately. A judge was designated to hear and determine this case when it was filed. When that judge determined that the case could not be scheduled for trial within 120 days, he referred it to a magistrate. Neither Title VII nor the Seventh Circuit decision in *Flowers* requires more.

### III. Constitutionality of the Reference

■ Morse argues that even if the applicable statutes permit this case to be referred to a magistrate without her consent, such a reference would be unconstitutional. First, Morse contends that trial by a magistrate of a civil case committed by Congress to an Article III court over the objection of a party would violate Article III, which provides:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const. Art. III, § 1. Magistrates do not have the protections constitutionally afforded to Article III judges. For example, full-time magistrates serve for eight-year terms and may be removed for "incompetency, misconduct, neglect of duty or physical or mental disability." 28 U.S.C. § 631; *see, e.g., Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1039 & n. 1 (7th Cir.1984). Morse claims that the reference of this case to a magistrate violates Article III by calling for a non-Article III judicial officer to exercise the judicial power of the United States. *See id.*

In *Geras*, the Seventh Circuit upheld the district court's reference of a diversity tort case to a magistrate for trial under 28 U.S.C. § 636(c) against Article III challenge. The Seventh Circuit described the issue as

> whether the magistrates, in exercising the powers granted to them in [§ 636(c) ], are performing the functions of federal judges. ... [I]f they are acting as judges, then the provision is unconstitutional. If, however, they are in fact acting as "adjuncts" and are not exercising the federal judicial power, then [§ 636(c) ] is constitutional.

742 F.2d at 1040 (footnote omitted). *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

According to the majority opinion, "the most troubling aspect of the magistrate system with respect to its status as a mere adjunct of the district court is the fact that the magistrate can order entry of final judgment." 742 F.2d at 1043. Nevertheless the court upheld § 636(c) largely because the magistrate's power to enter final judgment depended on the consent of the parties. Conversely, Morse contends, reference to a magistrate without her consent violates Article III. *See also Muhich v. Allen*, 603 F.2d 1247, 1252 (7th Cir.1979) (consensual reference of a 42 U.S.C. § 1983 case to a magistrate for trial permissible under 28 U.S.C. § 636(b)(3)).

However, Morse's reliance on *Geras* is misplaced. That case involved a reference under § 636(c). This case was referred to a magistrate under the more limited provisions of § 636(b)(2). Rather than conduct a trial and enter final judgment, the magistrate is to prepare findings of fact and recommendations of law as a master. The question is whether Article III permits a

judge to appoint a master to prepare findings of fact and recommendations of law without Morse's consent, not whether the magistrate can conduct a trial and enter final judgment.

In *Crowell v. Benson*, 285 U.S. 22, 48–54, 52 S.Ct. 285, 291–294, 76 L.Ed. 598 (1932), the Supreme Court upheld against Article III challenge a workmen's compensation statute which limited judicial review of findings of fact made by a non-Article III official to consideration of whether they are supported by the evidence. In part, the court relied on the "historic practice" of using masters to assist the courts without the consent of the parties. 285 U.S. at 51, 52 S.Ct. at 292. The court explained that "there is no requirement that, in order to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges." *Id.* Article III is satisfied where "the reservation of full authority to the court to deal with matters of law provides for the appropriate exercise of the judicial function." 285 U.S. at 54, 52 S.Ct. at 293. Although judicial review of a master's findings of fact is somewhat more limited than it was when *Crowell* was decided, a master's legal conclusions are still subject to full review. Thus the non-consensual appointment of a master under Rule 53 does not violate Article III, and the designation of a magistrate as the master raises no additional issues under Article III. *See Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 712–13 (7th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130, 1132–33 & n. 6 (2d Cir.1977); *see also Cruz v. Hauck*, 515 F.2d 322, 326–31 (5th Cir. 1975) (reviewing the history of limitations on the use of masters); Note, *Masters and Magistrates in the Federal Courts*, 88 Harv.L.Rev. 779, 787–803 (1975).

Finally, Morse argues that allowing Title VII cases to be referred to a magistrate over a party's objection would violate the equal protection guarantee of the Fifth Amendment. *See, e.g., Davis v. Passman*, 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979). According to Morse, that interpretation of § 706(f)(5) would create two classes of cases. Title VII cases could be tried by a magistrate over a party's objection; no other kind of case could. Morse contends that there is no rational basis for such a distinction.

This contention is based on a mistaken premise and it drastically oversimplifies the circumstances under which matters can be referred to a magistrate. First, magistrates may not try any civil case, including Title VII cases, under § 636(c) without the consent of the parties. However, the Act authorizes several other kinds of references for something less than a full trial without consent. *See, e.g.*, 28 U.S.C. §§ 636(b)(1)(A), 636(b)(1)(B), 636(b)(2). Under § 636(b)(2) a magistrate may be designated as a master in any civil case, including Title VII cases, without the consent of the parties. The difference in Title VII cases is that under § 706(f)(5) such a reference can be made without a showing of exceptional circumstances.[4]

■ Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment. *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976). The different treatment of Title VII cases under Rule 53 violates equal protection only if it is not rationally related to a legitimate government interest. *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Vaden v. Village of Maywood*, 809 F.2d 361, 364–65 (7th Cir.1987). Morse has the heavy burden of overcoming a presumption of rationality "by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana*, 452 U.S. 314, 332–33, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981).

---

**4.** In *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Supreme Court held that the inability to schedule a civil case for trial promptly was not the sort of exceptional circumstance that justified a nonconsensual reference to a master under Rule 53(b). By enacting § 706(f)(5) Congress essentially removed Title VII from the holding of LaBuy.

Morse has fallen far short of carrying that burden. Congress recognized that employment discrimination cases must be resolved quickly if the rights provided under Title VII were to be meaningfully enforced. Thus Congress has a legitimate interest in expediting Title VII cases, and granting judges wider latitude in appointing masters in Title VII cases than in other civil cases is rationally related to promoting that interest. It can be questioned whether the overall procedures adopted are best suited to that end, *see Aponte v. National Steel Service Center*, 500 F.Supp. 198, 204 (N.D.Ill.1980), but § 706(f)(5) does not violate equal protection.

## CONCLUSION

Morse's motion to vacate reference of this case to a magistrate is denied.