833 F.2d 1024
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Philip G. VARGAS, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 87-1318.
 United States Court of Appeals, Federal Circuit.
 Oct. 29, 1987.
 
 Before NICHOLS, Senior Circuit Judge, and FRIEDMAN and SMITH, Circuit Judges.
 DECISION
 NICHOLS, Senior Circuit Judge.
 
 
 1
 We affirm the judgment of the United States Claims Court of March 20, 1987 (Mayer, J.), which denies Vargas' application for attorney fees under the Equal Access to Justice Act of 1982, as amended, 28 U.S.C. Sec. 2412(d) (1985). Even though Vargas was the prevailing party on the merits, the trial court held in an unreported order that the government's position was "substantially justified," and we agree.
 
 OPINION
 
 2
 Plaintiff, a former employee of the now defunct Commission on Federal Paperwork (CFP), sued in the former Court of Claims to recover salary accruing after the effective date of a resignation, April 8, 1977, which he had executed and was not allowed to withdraw as he wished. After trial, Hogenson, Trial Judge (Commissioner) on September 29, 1982, filed a recommended opinion and findings awarding judgment to plaintiff, the case to be remanded for later determination of quantum. On October 1, 1982, the case passed to this court under Pub.L. No. 97-164, but the parties soon thereafter settled, except for the counsel fees, so this court never reviewed the Hogenson decision and on remand the new Claims Court entered judgment for plaintiff pursuant to it. The counsel fees question remained for determination. An ensuing Claims Court decision on that issue was remanded for a written decision on reconsideration in view of amendments in Pub.L. No. 99-50, approved August 8, 1985, and applicable to cases then pending.
 
 
 3
 The instant appeal does not give us jurisdiction to review the Hogenson decision, which has become final as to facts and law, as the court below assumed in its later proceedings on the fee issue. Judge Hogenson determined that the CFP was a temporary agency of the legislative branch. It employed Mr. Vargas as an "Impact Studies Analyst" and gave him responsibility over a Confidentiality and Privacy Study under the supervision of one Ann Macaluso, but with three employees under him. On or about March 1, 1977, Vargas submitted a draft report to Macaluso who, in turn, submitted it the same day to one Warren Buhler, Director of the CFP. He disliked it, and projected extensive revision, leading to harsh exchanges between him and Vargas which are described in detail by Judge Hogenson, but which we need not repeat for present purposes. Suffice it that on March 16 Buhler told Vargas "your services are no longer needed" and he signed a Form 52 to terminate Vargas' employment that day. The form was not further processed, however, as other employees of the agency suggested that Vargas resign to protect his ability to gain other employment in the future. Vargas did not himself originate that idea.
 
 
 4
 On March 18 Vargas typed and signed a resignation to be effective April 8. He conferred about it with the Personnel Director, Neuhauser, who is found not to have informed Vargas of his appeal rights as a veteran, though "aware [that] the Veterans Preference Act might be applicable." It is difficult to see how Neuhauser could have thought that if he had known--which he did not know--Judge Hogenson was going to hold the CFP was in the legislative branch. The Act in question, Act of June 27, 1944, 58 Stat. 387, expressly states in Section 20 that nothing in it is intended to apply to any position "in or under" the legislative branch.
 
 
 5
 Vargas now talked to various persons in other agencies where he was led to believe he had rights under the Veterans Preference Act that Buhler had violated. He wrote Buhler his actions of March 16 "were illegal and therefore null and void." He added:
 
 
 6
 [M]y resignation on March 18, 1977, besides being unofficial, was also involuntary and invalid and I hereby withdraw it.
 
 
 7
 Buhler responded April 1, in a letter drafted for his signature by Neuhauser. He declined "your request to withdraw your resignation." He denied the resignation was coerced, pointing out that Vargas had typed and signed it. Then he added the paragraph that made the case for Vargas:
 
 
 8
 I will not permit your resignation to be withdrawn since a replacement has been hired and your position filled. The Code of Federal Regulations, 5 C.F.R. Sec. 715.202(b) is applicable here, and I am enclosing the relevant page for your convenience.
 
 
 9
 With such enemies, who needs friends? In the first place, Judge Hogenson concluded that no replacement had been hired and the position had not been filled. Agency witnesses before Judge Hogenson could not agree who the replacement was. Neuhauser, the Personnel Director, thought it was one Mitchell who took over as "Acting Director" of the study, but without promotion or change in pay. Buhler thought the replacement was a Ms. Temko who spent much time working on the study, time Vargas presumably would have spent had he not resigned. But she was employed at a higher rank and pay, not in Vargas' slot, which remained unfilled. Judge Mayer, deciding the fee issue, finds both witnesses could have believed the persons named by them were the replacement and so testified in good faith. This conclusion is not clearly erroneous: the regulation is not free from ambiguity and the good faith of public officials is presumed. As the former Court of Claims once said in an often-cited case:
 
 
 10
 Personnel disputes are hard to resolve. In undertaking to do so, we start out with the presumption that the official acted in good faith. We are always loath to find to the contrary, and it takes, and should take, well-nigh irrefragable proof to induce us to do so.
 
 
 11
 Knotts v. United States, 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954).
 
 
 12
 In the second place, the cited regulation on its face says that a resignation may be withdrawn at any time before it has become effective, and an agency may decline a request to withdraw:
 
 
 13
 [O]nly when the agency has a valid reason and explains that reason to the employee. A valid reason includes, but is not limited to, administrative disruption, or the hiring or commitment to hire a replacement.
 
 
 14
 Thus an agency to which it applied had to have a good and valid reason to refuse to allow an employee to withdraw a resignation before its effective date. We all know such resignations are often proposed in fits of ill temper which are soon repented. The hiring of a replacement is only an example. Here the agency had the option to state a variety of other good and valid reasons. The purported withdrawal of the resignation did not incorporate any undertaking to change or retreat from the acerbic behavior towards Buhler that had precipitated his request for adverse action. On the contrary, it reexpressed and even enlarged upon the initial offense, accusing Buhler of forcing the resignation, a charge Vargas did not in court attempt to sustain. Yet they had to seize upon the weakest and poorest reason they could have thought of, the alleged hiring of a replacement.
 
 
 15
 In the third place, the entire regulation applied only to agencies in the executive branch, among which the CFP was not included. As we have said, this is settled for purposes of this case, at least, by Judge Hogenson's decision. All Buhler needed to do respecting the regulation was, therefore, to ignore it. Instead, he embraced it, thereby again, according to the Hogenson decision, assigning it a scope its authors could never have intended. Judge Mayer says, and we agree, that such a consequence of mistaken citation of an executive branch regulation was not necessarily foreseeable, and one could have believed it would not occur in perfect good faith. While Judge Hogenson's assignment of such consequences was not challenged by any appeal to this court, and is now law of the case, we certainly do not wish to be understood as wielding the authority of this court in support of the position.
 
 
 16
 We agree with, and adopt the position of Judge Mayer, so far as it goes, respecting the reasonableness of the government's position not only during the litigation, but before. Gavette v. Office of Personnel Management, 785 F.2d 1568, as amended, 808 F.2d 1456 (Fed.Cir.1986) holds, under the 1985 amendments, to avoid having counsel fees shifted to it, the government that lost a case must show that its position was not just reasonable, but clearly reasonable, and not only during the litigation, but back when the controversy was building up. When one asks how it came about that a "clearly reasonable" position could have been a loser in court, one instance that comes to mind, doubtless one among many, is that in a dispute the government was right, or at least clearly reasonable, on the merits of the original controversy, but lost because of its procedural error in the later history of the case.
 
 
 17
 The controversy here was not really about whether anybody, and if so, who had been appointed to replace Vargas when Buhler rejected his request to pull back his resignation. That was one of the side issues lawyers get to battling about, and which they come to regard as the main show. The real issue was whether Vargas should be separated April 8, the date selected by him for his resignation, or whether he should hold office until its normal expiration as this temporary agency came to the end of its useful life. As to this, the government's position, if not fully supported by law, was at least clearly reasonable. The Hogenson findings spell out abrasive and disruptive behavior by Vargas. On one occasion, he even refused to go to Buhler's office when asked to do so by Buhler. Though Vargas was a veteran, this did not give him retention rights in the legislative branch unless he could show a constitutional tort of the type of Davis v. Passman, 442 U.S. 228 (1979). In attempting to withdraw his resignation, Vargas did not promise reformation, rather he made a new unjustified accusation against Buhler. He obtained a reprieve from March 16 to April 8, by resigning, but did not offer to give this up if the resignation were revoked. All he offered Buhler was more controversy. His legal backing for this was his mistaken belief that the Veterans Preference Act of 1944 applied to his case.
 
 
 18
 Thus the government position originally was "clearly reasonable." Neuhauser, in his letter drafted for Buhler's signature, tossed all this advantage away with three blunders in one letter: alleging a replacement to have been selected when none had, selecting the least sustainable reason of several he was free to adduce according to the regulation, and embracing the regulation itself when, had he left it alone, Vargas could not have invoked it. After that letter the case was, for the government, practically unwinnable. Yet the letter was writen in good faith and with a reasonable belief it was the right thing to do. If the letter had been written in bad faith, we would doubtless have a different problem.
 
 
 19
 To summarize, here a controversy existed from the time Vargas formed the belief he had appeal rights under the Veterans Preference Act, wanted to exercise them, and communicated his wishes to CFP employees. The government had a position that was "substantially justified" and threw it away by good faith but ill-advised procedure in maintaining its side of the controversy. The statute fits the case perfectly, and the Claims Court decision to deny counsel fees must be affirmed.
 
 
 20
 FRIEDMAN, Circuit Judge, concurring.
 
 
 21
 Although I join in the court's judgment of affirmance, I think the case is far simpler than the court does and does not require the lengthy explication the court gives it.
 
 
 22
 As the Claims Court pointed out, this case raised novel issues, the answers to which were close. The government had substantial justification for its contention that the director had a sound basis for refusing to permit the appellant to withdraw his resignation, namely, that a replacement had been hired. The issues in the case were whether the regulation the director cited applied to the agency and, if it did apply, whether the director had violated it. Although the government ultimately lost on those issues, its position on them, both at the agency and in the Claims Court, was clearly reasonable. Accordingly, the Claims Court properly refused to award attorney fees under the Equal Access to Justice Act.
 
 
 23
 In my opinion, that is all that need be said to dispose of this case. I see no reason to consider, as the court does, whether the director improperly cited the regulation and whether he could or should have refused to permit withdrawal of the resignation on another ground.